IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMI KAUFMAN, KIMBERLY WIEMANN and KAREN WIEMANN, individually and in her capacity as Administrator of the Estate of Walter Wiemann,<br><br>       Plaintiffs,<br><br>   v.<br><br>PENNSYLVANIA STATE POLICE, CORPORAL TIMOTHY MORANDO, in his individual and official capacities, TROOPER COSTINI, in his individual and official capacities, and TROOPERS JOHN/JANE DOE 1-30, in their individual and official capacities,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 20-1383<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

  Presently before the Court are Defendants' Motion for Judgment on the Pleadings and brief in support (Docket Nos. 12, 13), and Plaintiffs' response in opposition thereto and brief in support (Docket Nos. 19, 20). For the reasons set forth below, Defendants' motion will be granted.

  **I.** **Background**

  Plaintiffs filed their Complaint in this matter on September 14, 2020, alleging various claims under federal and state law arising from the fatal shooting of Plaintiffs' decedent, Walter Wiemann. (Docket No. 1). Plaintiffs Tammi Kaufman and Kimberly Wiemann are Mr. Wiemann's daughters, and Plaintiff Karen Wiemann was Mr. Wiemann's wife and is the administrator of his estate (hereinafter, collectively, "Plaintiffs"). (Id. ¶¶ 4-6). Defendant Pennsylvania State Police Department (hereinafter "the PSP") is a Pennsylvania law enforcement

agency.  (Id. ¶ 7).  The Complaint also names as defendants Corporal Timothy Morando and Trooper Giustini, along with Troopers John/Jane Doe 1-30.[1]  (Id. at 1).

As alleged in the Complaint, on the morning of September 18, 2018, Mr. Wiemann, a 73-year-old Vietnam War veteran who suffered symptoms of severe Post-Traumatic Stress Disorder and had been diagnosed with Alzheimer's Disease/Dementia, became agitated.  (Docket No. 1, ¶¶ 8, 13).  Specifically, Mr. Wiemann, who allegedly often believed that he was in combat in Vietnam and had memory issues, became upset because the beehives that he had previously kept no longer had bees in them.  (Id. ¶¶ 9, 10).  Mr. Wiemann apparently did not remember that he and his family had previously cleaned out the beehives, and he wondered aloud if his neighbors had interfered with his bees.  (Id. ¶¶ 11, 12).  As Mr. Wiemann became increasingly agitated, Plaintiff Tammi Kaufman sought help by calling 911 and by contacting the PSP and the Center for Community Resources Crisis Center.  (Id. ¶¶ 13-16).

PSP troopers responded to the Wiemann residence.  (Docket No. 1, ¶ 18).  Throughout the events of the day, Plaintiffs Tammi Kaufman and Karen Wiemann allege that they notified and repeatedly reminded the various individuals and entities involved that Mr. Wiemann's diagnoses made him susceptible to agitation and that the telephone ringer inside the home was disabled.  (Id. ¶¶ 13, 15, 19, 25, 27, 36).  Plaintiffs also allegedly informed the PSP that Mr. Wiemann had access to an unloaded antique hunting rifle that was stored in a gun cabinet.  (Id. ¶ 21).

Representatives of the crisis center and Corporal Morando allegedly informed Plaintiffs that they had to complete a "§302 form" in order to involuntarily commit Mr. Wiemann, and Karen

---

[1]  Because Defendants note in their brief that Trooper Giustini's name is misspelled as "Costini" in the Complaint, the Court uses the correct spelling herein.  Also, although the Complaint does not specifically allege that Corporal Morando and Trooper Giustini are employees of the PSP, that allegation is inferred for purposes of the Court's analysis herein.

Wiemann completed such form. (Docket No. 1, ¶¶ 22-24). Corporal Morando also allegedly advised Plaintiffs that PSP "'would be required to use force'" if Plaintiffs did not complete the form, because the situation would be treated as a crime rather than as a mental health situation. (Id. ¶ 23 (quoting Corporal Morando)).

Additionally, Tammi Kaufman allegedly had a previous interaction with Trooper Giustini, "who informed her that he had family members with Alzheimer's Disease and that he understood the agitation symptoms that sometimes effects individuals with the disease." (Docket No. 1, ¶ 66). Trooper Giustini also allegedly "continued to assure Karen Wiemann and Tammi Kaufman that the responding officers were trained to deal with situations involving people with mental illness and that they would keep [Mr.] Wiemann safe and get him to a hospital for treatment." (Id. ¶ 67).

Eventually, according to the Complaint, a Special Emergency Response Team comprised of over 30 PSP troopers, an armored military vehicle, and a helicopter, all responded to the scene. (Docket No. 1, ¶ 30). Plaintiffs allege that, after approximately four hours, during which time PSP officers allegedly tried to contact Mr. Wiemann by telephone, and after Mr. Wiemann's barn had caught fire, Mr. Wiemann left the residence and was shot and killed by a PSP officer or officers. (Id. ¶¶ 28, 42-44).

The Complaint alleges violations of 42 U.S.C. § 1983 at Count I (citing the Fourth Amendment) and Count II (citing the Fourteenth Amendment), and causes of action under Pennsylvania law at Count III (assault), Count IV (battery), Count V (intentional infliction of emotional distress), Count VI (loss of consortium), Count VII (wrongful death action), and Count VIII (survival action). (Docket No. 1). All of Plaintiffs' claims are raised against the PSP and the individual Defendants in both their individual and official capacities. (Id.). Defendants PSP, Corporal Morando, and Trooper Giustini (hereinafter "Defendants") filed their Answer and

3

Affirmative Defenses to Plaintiffs' Complaint on December 17, 2020.[2] (Docket No. 11). On that same date, Defendants also filed their Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), which is currently before the Court.

## II. Standard of Review

According to Federal Rule of Civil Procedure 12(c), "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court will only grant judgment on the pleadings if the moving party "clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005); Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc., 433 F. Supp. 3d 747, 757 (W.D. Pa. 2020); see also 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1367 (2019) ("The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.").

A court, when considering a motion for judgment on the pleadings, "must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." Allstate Prop. and Cas. Ins. Co. v. Squires, 667 F.3d 388, 390 (3d Cir. 2012). Like in the context of a Rule 12(b)(6) motion, the complaint must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The Court of Appeals for the Third Circuit has set forth a three-step analysis for courts to use in determining whether a claim is plausible. First, a court should "outline the elements a plaintiff must plead to state a claim for relief." Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012).

---

[2]   The unidentified John/Jane Doe Troopers 1-30 are not represented by Defendants' counsel and are not involved in this motion.

Second, the court should "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (explaining that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Third, the court should assume that all well-pled factual allegations are true, "and then 'determine whether they plausibly give rise to an entitlement to relief.'" Bistrian, 696 F.3d at 365 (quoting Iqbal, 556 U.S. at 679).

### III. Legal Analysis

Defendants move for judgment on the pleadings pursuant to Rule 12(c), arguing that judgment should be granted in favor of the PSP on all claims asserted against it in the Complaint, and also in favor of Corporal Morando and Trooper Giustini on all official capacity claims and state tort law claims asserted against them in the Complaint.

#### A. Claims Asserted against the PSP (Counts I-VIII)

First, Defendants argue that judgment should be granted in favor of the PSP on all claims asserted against it because the PSP is immune from liability since the Eleventh Amendment bars suits in federal court seeking monetary damages against a state and its agencies and instrumentalities. See, e.g., Holt v. Pennsylvania State Police, No. 1:19-cv-00116, 2020 WL 1941035, *2 (W.D. Pa. Apr. 2, 2020) (citing cases discussing Eleventh Amendment Immunity and the Pennsylvania State Police), report and recommendation adopted, 2020 WL 1935516 (W.D. Pa. Apr. 22, 2020). In their brief in response, Plaintiffs state that they "concede that no cognizable action can be brought against the PSP as a Commonwealth agency pursuant to the Eleventh Amendment."[3] (Docket No. 20 at 5).

---

[3] In their response brief, after Plaintiffs state that they concede claims against the PSP, they explain that their "intention of including the agency" was in part "to inform the Court that policies regarding PSP response to 911 calls, especially calls related to Section 302 of the Pennsylvania Mental Health Procedures Act, are relevant to this case."

Therefore, all claims asserted against the PSP in Counts I through VIII of the Complaint will be dismissed without prejudice.

### B. Section 1983 Claims Asserted against Corporal Morando and Trooper Giustini in their Official Capacities (Counts I-II)

Defendants argue that judgment should also be entered in their favor with respect to the claims asserted in Counts I and II against Corporal Morando and Trooper Giustini in their official capacities, alleging violations of Plaintiffs' Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.[4] Defendants contend that because a suit against a police officer in his official capacity is no different from a suit against the State itself, Corporal Morando and Trooper Giustini are also immune from suit in their official capacities under the Eleventh Amendment.[5]

The Court agrees that a suit under Section 1983 against a municipal officer in his official capacity is essentially a suit against the entity for whom that officer works. See, e.g., Dec v. Pennsylvania State Police, No. 2:12-cv-565, 2012 WL 6099078, at *5 (W.D. Pa. Dec. 7, 2012) (explaining that a suit against a police officer in his official capacity is no different from a suit against the State, and is prohibited); Snatchko v. Peters Twp., No. 2:12-cv-1179, 2012 WL 6761369, at *11 (W.D. Pa. Dec. 28, 2012) ("A suit under § 1983 against a municipal officer in his official capacity is in actuality a suit directed against the municipality that the officer represents.") (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Additionally, as explained supra,

---

(Docket No. 20 at 5). The Court notes that Plaintiffs do not, however, make allegations regarding PSP policies in their Complaint.

[4] In their brief, Defendants address the official capacity claims asserted against them without differentiating between the Section 1983 claims and the state law claims. The Court, however, separately addresses the state law claims asserted against Defendants, infra.

[5] After Plaintiffs state in their response brief that they concede that no action can be brought against the PSP, they assert, "However, individuals including Trooper Morando, Trooper Giustini and the John/Jane Doe Troopers are liable under § 1983" and that "all claims should be considered against each Defendant individually, specifically the individual or individuals that shot and killed Mr. Weimann." (Docket No. 20 at 5). Thus, Plaintiffs appear to be relying on their claims brought against the various troopers in their individual capacities.

6

Plaintiffs state in their response brief that they "concede that no cognizable action can be brought against the PSP as a Commonwealth agency pursuant to the Eleventh Amendment." (Docket No. 20 at 5).

Therefore, Plaintiffs' claims in Counts I and II against Corporal Morando and Trooper Giustini in their official capacities will also be dismissed without prejudice.

### C. State Tort Law Claims Asserted against Corporal Morando and Trooper Giustini (Counts III, IV and V)

Defendants argue that the state tort law claims asserted against Corporal Morando and Trooper Giustini in Counts III (assault), IV (battery) and V (intentional infliction of emotional distress) should be dismissed because they each fail to state a claim.[6] At the outset, the Court notes that the Complaint lists the PSP, Corporal Morando, Trooper Giustini, and Troopers John/Jane Doe 1-30 as defendants, yet the individual averments throughout the Complaint allege actions of "Defendant" or "Defendants" without specifying to which defendant or defendants the allegations refer. Moreover, many averments in the Complaint refer only to actions of "PSP" or "Defendant PSP," which Plaintiffs concede has immunity from suit here under the Eleventh Amendment.

Additionally, the only specific allegations regarding actions of Corporal Morando concern discussions of the need for a Section 302 form to be completed. (Docket No. 1, ¶¶ 22-24). Similarly, the only specific allegations regarding actions of Trooper Giustini concern his assurances to Plaintiffs that he understood the agitation symptoms of Alzheimer's Disease, and that the officers were trained to deal with mental illness and would keep Mr. Wiemann safe. (Id. ¶¶ 66, 67).

---

[6] Because the Court finds that Plaintiffs have failed to state their various state law claims, the Court need not address Defendants' assertion of sovereign immunity.

1. **<u>Assault (Count III)</u>**

Defendants argue that the Complaint does not state an assault claim under Pennsylvania law against Corporal Morando or Trooper Giustini because Plaintiffs do not allege that either of them committed the actions required to establish such a claim. In order to constitute assault under Pennsylvania law, the defendant's action must place the plaintiff in "imminent apprehension of harmful or offensive contact." <u>Benninger v. Ohio Twp. Police Dep't</u>, No. 2:19-cv-00524, 2020 WL 264967, at *3–4 (W.D. Pa. Jan. 17, 2020) (citing <u>Brownstein v. Gieda</u>, 649 F. Supp. 2d 368, 375 (M.D. Pa. 2009)). Additionally, "[i]mminent apprehension is interpreted to mean that the person 'must believe that the act may result in imminent contact unless prevented from so resulting by the other's self-defensive action or by his flight or by the intervention of some outside force." <u>Id.</u> (quoting Restatement (Second) of Torts § 24, and citing <u>Cucinotti v. Orman</u>, 159 A.2d 216, 217 (Pa. 1960) ("Words in themselves, no matter how threatening, do not constitute an assault; the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so.")).

The Complaint alleges in Count III that "Defendant intended to cause a harmful or offensive contact with [Mr.] Wiemann and caused [Mr.] Wiemann to be in imminent apprehension of such contact," and that "Defendant used more than threatening words to put [Mr.] Wiemann in reasonable apprehension of physical injury because they were in a position to carry out the threat immediately," which mirrors the definition of assault under Pennsylvania law. (Docket No. 1, ¶¶ 72-73). However, the allegations in Count III refer only to "Defendant" (and once to "PSP") without identifying to which defendant they are referring among the PSP, Corporal Morando, Trooper Giustini, and Troopers John/Jane Doe 1-30. (<u>Id.</u> ¶¶ 72-76). Additionally, although the Complaint's prior paragraphs are incorporated into Count III (<u>id.</u> ¶ 71), the allegations elsewhere

8

in the Complaint – regarding Corporal Morando's discussions as to Section 302 or Trooper Giustini's assurances and comments to Plaintiffs, described supra – do not aver facts to suggest that the actions of either Corporal Morando or Trooper Giustini constituted a civil assault, nor do they even allege that either of those defendants was directly involved in the fatal shooting of Mr. Wiemann.

Therefore, the Court finds that the allegations of Plaintiffs' assault claim constitute only a "formulaic recitation of the elements" of that tort, and Plaintiffs do not allege specific facts in support of such claim against either Corporal Morando or Trooper Giustini. Twombly, 550 U.S. at 555. Accordingly, the assault claims asserted in Count III of the Complaint against Corporal Morando and Trooper Giustini will be dismissed without prejudice.

### 2. Battery (Count IV)

Defendants also argue that the Complaint does not state a battery claim under Pennsylvania law against Corporal Morando and Trooper Giustini because Plaintiffs do not allege that either of them committed the actions required to establish such a claim. In order to establish battery under Pennsylvania law, a plaintiff must plead and prove that a particular defendant intended to cause a harmful or offensive contact to the plaintiff – or an imminent apprehension of such contact in the plaintiff – and that such contact with the plaintiff actually resulted. See Lakits v. York, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003) (citing Friter v. Iolab Corp., 607 A.2d 1111, 1115 (Pa. Super. Ct. 1992); Adams v. Purfield, No. CIV.A. 95-4052, 1995 WL 610654, at *5 (E.D. Pa. Oct. 18, 1995); Restatement (Second) of Torts § 18)).

The Complaint alleges in Count IV that "Defendant PSP intended to cause a harmful or offensive contact with [Mr.] Wiemann or put him in imminent apprehension of such a contact, and the offensive contact with Plaintiff resulted," and that "[s]pecifically, Defendant PSP acted with

an intent to cause a harmful or offensive contact, through Defendant's use of flash bangs on [Mr.] Wiemann and shooting him in the head." (Docket No. 1, ¶¶ 79-80). Although, once again, the prior paragraphs of the Complaint are incorporated into Count IV (id. ¶ 77), the allegations in Count IV refer only to actions of "Defendant PSP" (and once to "Defendant") (id. ¶¶ 78-82), but they do not refer to actions of Corporal Morando or Trooper Giustini, nor do Plaintiffs' allegations elsewhere in the Complaint, described supra, aver facts to suggest that the actions of either of them could state a claim of battery or that either of them was directly involved in the fatal shooting of Mr. Wiemann.

Therefore, the Court finds that the Complaint does not plausibly allege specific facts to support a battery claim against either Corporal Morando or Trooper Giustini. See Twombly, 550 U.S. at 555. Accordingly, the battery claims asserted in Count IV of the Complaint against Corporal Morando and Trooper Giustini will be dismissed without prejudice.

### 3. Intentional Infliction of Emotional Distress (Count V)

Finally, Defendants argue that the Complaint fails to state a claim of intentional infliction of emotional distress under Pennsylvania law against Corporal Morando or Trooper Giustini because it does not allege all the required elements of that tort. In order to plead a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege:

> (1) extreme and outrageous conduct; (2) intentional or reckless conduct; (3) conduct caused the emotional distress; and (4) severe emotional distress. *M.S. ex rel. Hall v. Susquehanna Twp. School Dist.*, 43 F. Supp. 3d 412, 430 (M.D. Pa. 2014) (citation omitted). A plaintiff must allege physical manifestations of the emotional distress. *Id.* (citing *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. 2004)). It is not enough for a plaintiff to generically plead the elements of a claim for IIED, but rather, sufficient detail must be asserted to make out a plausible claim. *Id.* at 430-31 ("Although Plaintiffs allege M.S. suffered 'physical harm' as a result of the emotional distress, such a general, non-specific averment has been found insufficient to survive motions to dismiss."); *see also Dobson v. Milton Hershey School*, 356 F. Supp. 3d 428, 439-40 (M.D. Pa. 2018) (holding plaintiff's bald

allegations of "physical harm" and "physical manifestations of emotional distress" were not enough, without more, to set forth a plausible IIED claim). Smith v. Washington Area Humane Soc., No. 2:19-cv-1672, 2020 WL 6364762, at *8 (W.D. Pa. Oct. 29, 2020) (finding that plaintiffs merely alleged that they suffered unspecified physical injury, and dismissing plaintiffs' claim with leave to amend in order to permit them to allege physical manifestations of emotional distress).

Here, once again, the allegations in Count V first refer to "Defendant PSP's actions" and then to "Defendant's actions" and "Defendants' actions," without identifying to which defendant(s) they are referring among the PSP, Corporal Morando, Trooper Giustini, and Troopers John/Jane Doe 1-30. (Docket No. 1, ¶¶ 84-91). Additionally, without including allegations of specific physical manifestations of emotional distress, Plaintiffs allege in Count V only that the "acts of Defendant ha[ve] caused Plaintiffs severe emotional distress" and that "Plaintiffs have suffered actual physical and emotional injuries, and other damages and losses as described herein." (Id. ¶¶ 86, 91). Although Plaintiffs also incorporate by reference into Count V the prior paragraphs of the Complaint (id. ¶ 83), none of those paragraphs contain allegations of physical manifestations of emotional distress. Thus, despite the fact that a claim of intentional infliction of emotional distress must include allegations of physical manifestations of the emotional distress suffered, the Complaint contains no such allegations here. See Smith, 2020 WL 6364762, at *8.

Therefore, because Plaintiffs have not alleged that they suffered such injuries as a result of the conduct of Corporal Morando and Trooper Giustini, the intentional infliction of emotional distress claims asserted in Count V of the Complaint against Corporal Morando and Trooper Giustini will be dismissed without prejudice.

## IV.     Conclusion

Accordingly, Defendants' Motion for Judgment on the Pleadings (Docket No. 12) will be granted.  All claims asserted against the PSP in Counts I-VIII, the claims asserted against Corporal Morando and Trooper Giustini in their official capacity in Counts I and II, and the state tort law claims asserted against Corporal Morando and Trooper Giustini in Counts III, IV, and V, will all be dismissed without prejudice to amendment with sufficient facts to state a claim.

An appropriate Order will follow.


Dated: September 2, 2021                              *s/ W. Scott Hardy*
                                                                   W. Scott Hardy
                                                                   United States District Judge

cc/ecf:  All counsel of record